## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jennifer W.,[1]

          Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

          Defendant.

Case No. 24-cv-4127 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer W. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") ("Decision"). Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) This matter is before the Court on the parties' briefs. The Court remands this matter to the Commissioner on grounds that the Appeals Council improperly excluded new, material evidence and the vocational expert testimony on which the ALJ relied was self-contradictory and lacked credibility.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

# BACKGROUND

## I.    Plaintiff's Claim

Plaintiff applied for DIB on November 15, 2021 (*see* Soc. Sec. Admin. R. ("R.") 207).[2]  At that time, she was 30 years old (*id.*), with a general educational development ("GED") degree (R. 243) and previous work experience as a bartender/server, dispatcher, customer service representative, long-term care giver, and security guard (R. 230, 267).  Plaintiff alleged a disability onset date of January 1, 2020 (R. 227), resulting from various conditions, including: "complex post-traumatic stress disorder ("PTSD"), depression, anxiety, "sleep condition", "abnormal heartbeat", "heart palpitations", "social anxiety", "reclusive", "hyper vigilant", "lower back condition", and "slipped disc in low back" (R. 242).

## II.    Regulatory Background

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are

---

[2] The Social Security administrative record ("R.") is filed at ECF No. 9.  For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

2

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

### III.    Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 107) and on reconsideration (R. 117).  On October 3, 2023, at Plaintiff's request (R. 136), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 33-66).  An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified.  (*Id.*)  The ALJ issued his Decision on December 14, 2023.  (R. 15-28.)

At step one of the sequential analysis the ALJ concluded that, although Plaintiff tried to return to work as a dog-walker since her alleged disability onset date, this work did not qualify as substantial gainful activity.  (R. 20-21.)  At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; and PTSD.  (R. 21.) The ALJ also found Plaintiff had the following non-severe impairments: asthma; stimulant use disorder; supraventricular tachycardia; obesity; and low back pain.  (*Id.*)  At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing.  (R. 21-23.)

The ALJ then determined Plaintiff's RFC.  He found that:

[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple, routine and repetitive tasks but not at a fast production rate pace, such as that found in assembly-line work; [Plaintiff] can have occasional and superficial interactions with supervisors and co-workers; no interactions with the public; and occasional changes in a predictable work setting with end-of-day or hourly job expectations rather than minute-by-minute production quotas.

(R. 23.)

In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record,

4

Plaintiff's medical testing, examination and treatment history, her testimony regarding her symptoms, her employment history, and her activities of daily living.  (R. 23-26.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work as a dispatcher (classified as sedentary, skilled, and SVP 5[4]) and a customer service rep (classified as sedentary, skilled, and SVP 5).  (R. 26.)  The ALJ then determined that Plaintiff cannot perform her past relevant work.  (*Id.*)  Relying on the VE's testimony, the ALJ then found at step five that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: hand packager (DOT 920.587-018, with around 90,000 jobs in the national economy); inspector[5] (DOT 589.686-038, with around 80,000 jobs in the national economy); and warehouse worker (DOT 922.687-058, with around 120,000 jobs in the national economy).  (R. 26-27.)  Based on these findings, the ALJ concluded Plaintiff was not disabled, and issued his Decision denying DIB on December 14, 2023.  (R. 27-28.)

Plaintiff asked the Appeals Council to review the ALJ's Decision on December 28, 2023. (R. 201-03; *see also* R. 6.)  She provided additional evidence for the Council's consideration in connection with her request for review, including: (1.) "17 pages of records from Allina Health Systems dated September 6, 2023, to September 25, 2023"; and (2.) a 10-page psychological report and a 5-page mental functioning questionnaire ("Richardson Evidence") completed by a licensed psychologist, Thomas K. Richardson, M.A., L.P., L.S.P., after he evaluated Plaintiff on January

---

[4] "SVP" refers to the "specific vocational preparation" for a given occupation.  Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT").  Social Security Ruling (SSR) 00-4p.

[5] Although the ALJ and VE describe this occupation as "inspector," the DOT's full title for this occupation is "Rug-Inspector Helper."  *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT"), 1991 WL 684514.

25, 2024.  (R. 2; R. 67-81.)  The Appeals Council declined to consider the additional evidence Plaintiff provided, however.  (R. 2; *see also* R. 5-6, Council's exhibit list.)  As to the Allina Health Systems records, the Council decided the evidence did not "show a reasonable probability that it would change the outcome of the decision."  (R. 2.)  As to the Richardson Evidence, the Council concluded that it did not affect the benefits decision because the evidence was dated after the ALJ's Decision and therefore did not "relate to the period at issue."  (*Id.*)  Thus excluding the additional evidence, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1).

Having exhausted the administrative appeals processes, Plaintiff filed this lawsuit.  Plaintiff challenges both the Appeal's Council's decision to exclude the Richardson Evidence and the ALJ's reliance on the VE's testimony at step five of the sequential analysis.  (*See* ECF No. 14.)

## DISCUSSION

## I.    The Appeals Council's Decision

### A.    Standard of Review

The Appeals Council's refusal to consider additional evidence and denial of review may establish grounds for remand.  *See, e.g.*, *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (holding that failure to consider additional evidence "may be a basis for remand by a reviewing court") (citing *Williams v. Sullivan*, 905 F.2d 214, 216–17 (8th Cir. 1990)); *Keeton v. Department of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law."); *see also Gelner v. Berryhill*, No. 17-cv4202 (JNE/KMM), 2018 WL 3946520, *3-4 (D. Minn. July 24, 2018), *report and recommendation adopted*, 2018 WL 3946476 (D. Min. Aug. 16, 2018) (reviewing Appeals Council's failure to consider new evidence and denial of review); *Stimpson v. Berryhill*, No. 17-

6

cv-824 (HB), 2018 WL 1440336, at *4 (D. Minn. Mar. 22, 2018) (reviewing Appeals Council's denial of review); *Laveau v. Astrue*, No. 11-cv-505 (SRN/LIB), 2012 WL 983598, at *17-18 (D. Minn. Feb. 14, 2012) (same); *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251–52 (N.D. Al. 2001) (collecting cases). The Appeals Council must grant a request for review if: (1.) it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision; (2.) there is a reasonable probability the evidence would change the outcome of the decision; and (3.) the claimant showed good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935. *See* 20 C.F.R. § 404.970(a)(5), (b); *see also Box*, 52 F.3d at 171 (quoting *Williams*, 905 F.2d at 216–17).

District courts review de novo whether the evidence at issue is new, material, and related to the relevant period. *Box*, 52 F.3d at 171. Evidence is new when it is "more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). And evidence is material when it is "relevant to [the] claimant's condition for the time period for which benefits were denied." *Id.* The exact timing of the additional evidence "is not dispositive of whether evidence is material." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990).

When new evidence is submitted to the Appeals Council, it becomes part of the administrative record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) (citing *Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990)). "If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material." *Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217). The court may also remand the matter directly to the ALJ to properly consider the new evidence in light of the record as a whole. *Gartman v. Apfel,* 220 F.3d 918, 922 (8th Cir. 2000). However, if "the Appeals

Council considers the new evidence but declines to review the case, [the court will] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217).

### B.    Analysis

Upon reviewing the record, the Court concludes that the Appeals Council erred in failing to consider the Richardson Evidence. When a claimant presents evidence to the Appeals Council that is new, material, and relates to the period on or before the date of the ALJ's Decision, the Council *must* consider it. *Williams*, 905 F.2d at 216. The Richardson Evidence was new because it did not exist prior to the ALJ's Decision. Defendant concedes the evidence is new insofar as it was not generated until after the ALJ's Decision, but he argues it is cumulative of evidence that already existed in the record, such as evidence of Plaintiff's past diagnoses, treatment history, activities of daily living, and a 2-page medical opinion largely consisting of checkbox responses. (ECF No. 17 at 9-11.) The Court disagrees. The Richardson Evidence is by far the most detailed medical opinion concerning Plaintiff's mental health in the record before the Court. The Richardson Evidence includes a description of Mr. Richardson's meeting with Plaintiff, a summation of Plaintiff's reported history, a description of a battery of mental functioning tests Mr. Richardson conducted on Plaintiff, the results of those tests, an interpretation of the test results, and Mr. Richardson's conclusions, diagnoses and treatment recommendations. (R. 71-81.) Mr. Richardson's report includes, among other conclusions, a statement that Plaintiff "currently … likely would be viewed as not suitable for competitive employment." (R. 81.) The Richardson Evidence also includes a "Mental Functioning Questionnaire" that Mr. Richardson completed based on his assessment of Plaintiff and his 25 years of experience working as an evaluator for the

Minnesota Department of Employment and Economic Development's Division of Vocational Rehabilitation.  (R. 80-81.)  Nothing else in the record compares with the level of detail and analysis provided in the Richardson Evidence.  The Court therefore concludes this evidence is new and not cumulative.  *See Williams*, 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions); *see also Bergmann*, 207 F.3d at 1069 (citing *Williams*, 905 F.2d at 216).

The Richardson Evidence is also material and related to the period on or before the date of the ALJ's decision.  It includes a detailed analysis of Plaintiff's cognitive abilities and mental health as established through a variety of objective testing measures.  Since Plaintiff's only severe impairments relate to her mental disabilities, this evidence is highly relevant to her disability claim.  The Appeals Council and Defendant assert that this evidence is not material because it is based on an assessment conducted *after* the ALJ's Decision.  (R. 3; ECF No. 17 at 7-8.)  But this fact alone is not dispositive.  *See Williams*, 905 F.2d at 216.  Rather, the Court must consider whether the Richardson Evidence relates to Plaintiff's condition prior to the ALJ's Decision.  The Court finds that it does.  Though the Richardson Evidence is based on Mr. Richardson's examination of Plaintiff in January 2024, there is nothing in the record to suggest that Plaintiff's condition significantly deteriorated between the date of the ALJ's Decision in December 2023 and the date of the examination approximately one-and-a-half months later.  To the contrary, Mr. Richardson's opinion relies substantially on Plaintiff's reported symptoms and mental health history predating the ALJ's Decision, including her substance addiction and multiple instances of self-harm dating back to her years in middle school.  (R. 72-74.)  Mr. Richardson's report further notes Plaintiff's experiences with childhood trauma, domestic abuse, and "long-standing history of substantial depression issues resulting in multiple hospitalizations."  (*Id.*)  Given Plaintiff's long history of

mental health symptoms and the absence of any evidence of recent trauma or other aggravating factors, the suggestion that Plaintiff's condition suddenly arose or worsened during the brief period between the ALJ's Decision and Mr. Richardson's examination is highly improbable. The Court is persuaded that the Richardson Evidence reflects Plaintiff's mental health during the relevant period and is not capturing an after-acquired condition or a condition that significantly deteriorated.

Defendant argues that because the Richardson Evidence includes a new diagnosis of "unspecified neurocognitive disorder", that it captures "after-acquired conditions." (ECF No. 17.) Defendant's argument appears to be premised on the meritless notion that a medical condition cannot exist unless it is diagnosed. Based on the record evidence, the Court is compelled to conclude that any new diagnosis identified a condition that existed during the relevant period but simply had not yet been diagnosed.

Defendant also argues that even if the Richardson Evidence is considered, the ALJ's Decision is supported by substantial evidence. (ECF No. 17 at 11.) But it is not the Court's role to speculate how the Richardson Evidence might affect the overall outcome of this case. Because the Appeals Council did not consider it, the Court's analysis is limited to whether the Council should have done so. *See Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217) (when addressing newly submitted evidence, the Court determines whether substantial evidence supports the Decision as a whole only if the Appeals Council actually considered the newly submitted evidence). The Court cannot accept Defendant's invitation to weigh how the new evidence might have affected the determination.

The Court further finds good cause supports the delay in producing the Richardson Evidence. The parties do not appear to dispute this issue. The Richardson Evidence is the result

of Mr. Richardson's examination of Plaintiff on January 25, 2024.  Plaintiff was initially referred for neuropsychological testing on June 8, 2023 (R. 952)—approximately four months before the ALJ hearing and six months before the ALJ's Decision.  Plaintiff's delay in producing this evidence thus appears to have been the product of systemic scheduling delays.  Moreover, nothing in the record suggests Plaintiff failed to produce the evidence prior to the ALJ hearing due to a lack of proper diligence.  *See* 20 C.F.R. § 404.970(b)(3)(iv) (stating good cause exists if a claimant "actively and diligently sought evidence from a source and the evidence was not received").

Because the Richardson Evidence was new and material and there was good cause for its late production, remand is appropriate.  The Court concludes the new evidence should be evaluated in light of the record as a whole.  The Court therefore vacates the Decision and remands this matter directly to the ALJ, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.  42 U.S.C § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *see Gartman,* 220 F.3d at 922 (remanding case with improperly overlooked new, material, timely information directly to ALJ).  On remand, the ALJ shall consider whether the Richardson Evidence alters the five-step analysis and recall a vocational expert for testimony if necessary to address a new hypothetical based on any modified RFC.

## II.    The VE's Testimony

Plaintiff also argues the ALJ's step five analysis in his Decision was flawed in two ways: (1.) he failed to reconcile inconsistencies in the VE's testimony concerning occupations Plaintiff could perform; and (2.) he relied on VE testimony regarding the number of jobs available in the national economy that lacked adequate indicia of reliability.  (*See* ECF No. 14 at 4-5.)

### A.    Standard of Review

The Court's review of the ALJ's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

"[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same). As relevant to this matter,

when there is a conflict between a VE's testimony and the DOT, the ALJ has an *affirmative* duty to: (1.) resolve the conflict before relying on the VE evidence; and (2.) "explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4P, 2000 WL 1898704, at *2-4 (Dec. 4, 2000); *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014). "The ALJ is not absolved of this duty merely because the VE responds 'yes' when asked if [his] testimony is consistent with the DOT." *Moore*, 769 F.3d at 990.

### B.    Analysis

#### 1.    Inconsistencies in the VE's Testimony

The VE testified that Plaintiff could perform the occupations of hand packager, inspector, and warehouse worker. (R. 60.) When the ALJ asked the VE if his testimony was consistent with DOT, the VE responded, "Yes." (R. 61.) Plaintiff argues there are two significant inconsistencies in this testimony that the ALJ erroneously failed to resolve in accepting this bald statement, though Plaintiff raised these issues in writing less than a week after the hearing (R. 327).

First, Plaintiff notes that the DOT defines the hand packager job as including a responsibility to start, stop, and regulate the speed of a conveyor. *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT"), 1991 WL 687916 (hand packager). Plaintiff argues this job responsibility is inconsistent with Plaintiff's RFC, which limits her to "simple, routine and repetitive tasks that are not performed at a fast production-rate paced [sic], such as that found in assembly line work." (ECF No. 14 at 24.) A plain reading of the RFC and the DOT undermines Plaintiff's argument. Plaintiff's RFC precludes her from performing fast-paced work. A hand packager's duty to regulate the speed of a conveyor does not indicate any specific pace, and nothing in the DOT's description of the hand packager occupation involves any rate or pace requirement. *See* DOT, 1991 WL 687916 (hand packager); *Westfield v. O'Malley*, No. 1:23-cv-

584 (HBK), 2024 WL 2834827, at *7 (E.D. Cal. June 4, 2024); *Bryant v. Colvin*, No. 13-CV-857 (AJW), 2014 WL 181016, at *3-4 (C.D. Cal. May 7, 2014); *James W.K. v. Kijakazi*, No. 21-cv-440 (JFJ), 2023 WL 1861214, at *6 (N.D. Okla. Feb. 9, 2023).  Because there was no inconsistency between the DOT's definition of the hand packager job and Plaintiff's RFC, the ALJ did not err in that respect.

Second, Plaintiff argues the VE's testimony concerning the hand packager and warehouse worker occupations is inconsistent with the VE's own testimony and the limitations in Plaintiff's RFC with respect to her ability to carry out instructions.  The DOT states that those occupations require level 2 reasoning, which means the worker must be able to "carry out *detailed* but uninvolved written or oral instructions."  DOT, 1991 WL 687916 (hand packager) (emphasis added); DOT, 1991 WL 688132 (warehouse worker).  The VE testified that: (1.) Plaintiff could perform the hand packager and warehouse jobs (which pursuant to the DOT would require Plaintiff to carry out "detailed" written or oral instructions); and (2.) Plaintiff's limitation to "simple, routine, repetitive tasks precludes the ability to carry out detailed, written and oral instructions." (R. 63.)  Plaintiff argues this testimony is self-contradictory.  (ECF No. 22 at 10-11.)

Defendant argues Plaintiff's contention is foreclosed under applicable case precedents. (*See* ECF No. 17 at 14, citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), and *Anna K. v. O'Malley*, No. 23-cv-549 (RNL), 2024 WL 4285429, at *7 (D. Minn. Sept. 25, 2024).)  Defendant specifically asserts that, pursuant to these cases, a limitation to simple tasks is not inconsistent with level 2 reasoning as defined in the DOT.

But whether level 2 reasoning as defined in the DOT is generally foreclosed by a limitation to simple tasks is not the issue, because here the VE explicitly testified that Plaintiff's limitation to "simple, routine and repetitive tasks" "precludes the ability to carry out detailed, written and

oral instructions." (R. 63.)  Defendant thus misconstrues Plaintiff's contention.  Plaintiff is not arguing that the VE's testimony was inconsistent with the DOT; rather, Plaintiff is arguing the VE's testimony is inconsistent with itself.  (*See* ECF No. 22 at 10-11.)  The Court agrees with Plaintiff and directs the ALJ on remand to resolve this internal inconsistency.  *See Saimalo T. v. O'Malley*, No. 2:24-cv-1241 (MDC), 2025 WL 2073970, at *6 (D. Nev. July 22, 2025) ("Where a VE's testimony appears to be self-contradictory, remand is appropriate."); *Diane B. v. Kijakazi*, No. 21-cv-794 (TSH), 2022 WL 94915, at *16 (N.D. Cal. Jan. 10, 2022) (citing *Hamilton v. Comm'r of Soc. Sec. Admin.*, 464 F. App'x 681, 682 (9th Cir. 2012)).

## 2. Reliability of VE Job Numbers Testimony

Plaintiff's final argument is that the ALJ's step five analysis was erroneous because it relied on VE testimony that lacked indicia of reliability.  (ECF No. 14 at 5.)  Plaintiff specifically argues the VE's methodology for estimating jobs numbers was not reasonably reliable.  (*Id.*)

Relying solely on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy.  (R. 26-27.)  The VE testified that approximately 90,000 hand packager jobs, 80,000 inspector jobs, and 120,000 warehouse worker jobs were available, and that these jobs were consistent with Plaintiff's RFC.  (R. 60.)  On cross-examination, Plaintiff's counsel asked the VE how he derived these numbers, given that the Department of Labor does not collect job numbers data based on the DOT's occupational classifications.  (R. 64.)  The VE responded vaguely:

> When I did PhD work, I majored in statistics.  I have lots of background in trying to come as close as I can with numbers.  The rest of it I can't tell you anything else … [I]t's just my own homemade way to go at it.  I've been a contractor with Social Security since 1992, when the <u>DOT</u> was written.  So I've been at this for 30 years.  And by now, I kind of know what I'm doing … I get into the website of the Bureau of Labor Statistics and Occupational Outlook handbook and look at what jobs are there.  And I count and that's updated quarterly.  And I can't tell you must more from there – than that.

(R. 64-65.)

Less than a week after the hearing, Plaintiff submitted written objections to the VE's testimony. (R. 327-28.) One of Plaintiff's objections was that the VE's job number estimates were unreliable because: (1.) the VE failed to articulate an intelligible methodology; and (2.) based on a reliable employment database, the VE's job estimates appeared to be significantly inflated.[6] (R. 328.) In his Decision, the ALJ overruled Plaintiff's objection on the sole basis that the VE has significant experience as a vocational expert.

The Court rejects the notion that the VE's years of experience were alone enough to enable him to divine accurate job numbers data. In *Biestek v. Berryhill*, 587 U.S. at 105, the Supreme Court described a hypothetical vocational expert whose testimony would be adequate to support an ALJ's conclusion that a claimant could perform jobs existing in sufficient numbers in the national economy. This hypothetical expert has "top-of-the-line credentials, … [and] a history of giving sound testimony about job availability in similar cases." *Id.* Such credentials and experience are not alone sufficient, however. *See Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020) ("[W]here, as here, the claimant challenges the job-number estimate, the ALJ must require the VE to offer a reasoned and principled explanation of the method he used to produce it."). The hypothetical expert also "explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities; and extrapolating those findings to the national economy *by means of*

---

[6] Plaintiff's source was Job Browser Pro (R. 328), a database that is "well-accepted" in the field. *Chavez v. O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024). This database showed that: (1.) instead of approximately 90,000 hand packager (DOT 920.587-018) jobs in the national economy, there were 72,297; (2.) instead of approximately 80,000 inspector (DOT 589.686-038) jobs in the national economy, there were 15; and (3.) instead of approximately 120,000 warehouse worker (DOT 922.687-058) jobs in the national economy, there were 4,109. (R. 328.)

*a well-accepted methodology*. She *answers cogently and thoroughly* all questions put to her by the ALJ and the applicant's lawyer." *Id.* (emphasis added).

The *Biestek* Court did not intend for its hypothetical to set the standard for determining expert reliability, and the Court does not intend to imply such a standard here. *Id.* at 108 (rejecting categorical rule for evaluating vocational expert testimony). But the VE in this case was not even in the ballpark. The VE merely stated that he uses "his own homemade way of doing it," which he described as involving a vague "count" of unidentified information on the Bureau of Labor Statistics' website and the Occupational Outlook handbook. This explanation does not identify *any* methodology, much less a "well-accepted" one, and is "neither cogent nor thorough." *Brace*, 970 F.3d at 822. The VE's inability to articulate his methodology in intelligible terms "runs contrary to the Supreme Court's admonition that the [disability benefits] process be understandable to the layman claimant." *Brace*, 970 F.3d at 823.

The VE's credibility is further suspect in light of Plaintiff's evidence from a reliable source suggesting the VE's estimates are seriously flawed. The VE's testimony fails to "instill [any] confidence that the estimate was not conjured out of whole cloth." *Fetting v. Kijakazi*, 96 F.4th 332, 339 (7th Cir. 2023). Based on the totality of the evidence, the Court does not have a "modicum of confidence in [the] reliability" of the VE's job estimates. *Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023) (citation modified).

Since the VE's testimony was the sole basis for the ALJ's conclusion at step five of the sequential analysis, the Court finds that the Decision was not supported by substantial evidence. *Cf. Fetting*, 970 F.3d at 823 ("All the substantial evidence standard requires is that a vocational expert gave enough detail for the Court to understand the sources of his data and the general

process he adopted.").  The Court therefore orders the ALJ, on remand, to recall a VE to provide job numbers estimates based on reliable sources and a well-accepted methodology.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  Plaintiff's Request for Relief (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART**;

2.  The Commissioner's Request for Relief (ECF No. 17) is **DENIED**; and

3.  The Decision is **VACATED AND REMANDED** for further administrative action consistent with this Order pursuant to sentence 4 of 42 U.S.C. § 405(g).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: November 14, 2025                    *s/ Dulce J. Foster*
                                            Dulce J. Foster
                                            United States Magistrate Judge